RECEIVED
IN CLERK'S OFFICE

SEP 0 4 2015

U. S. DISTRICT COURT
MID. DIST. TENN.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

CRAIG CUNNINGHAM, Pro-se      )
                             )
        *Plaintiff*           )
                             ) CIVIL ACTION NO.: 3:2015-cv-00566
v.                           )                                    )

Palmer Administrative Services, Inc. Dba Liberty Automotive Protection, Michael
Shaftel, John/Jane Does 1-5      )

        *Defendants.*

## Plaintiff's Second Amended complaint

1. Pursuant to rule 15 of the Federal Rules of Civil Procedure and in response to the Defendant's Motion to Dismiss per rule 12(b), the Plaintiff hereby files this Second amended complaint.

2. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Davidson County at all times relevant to the complaint, and currently has a mailing address of 5543 Edmondson Pike, ste 248, Nashville, TN 37211

3. Upon information and belief, Palmer Administrative Services, Inc., is a New Jersey Corporation that is using the trademark and business name of Liberty Automotive Protection to sell extended warranty services for cars and they are operating from 343 Sunset Ave, Ocean NJ 07712. Their registered agent is Registered Agents Legal Services, LLC 11013 Centre Road, ste 403S, Wilmington DE 19805.

4. Michael Shaftel is a natural person and officer of Palmer Administrative Services,

Inc., and can be served at 343 Sunset Ave, Ocean NJ 07712 or via Registered agents Legal Services, LLC 11013 Centre Road Ste 403S, Wilmington DE 19805.

5. John/Jane Doe Defendants are individuals/entities currently unknown to the Plaintiff which are liable for the calls at issue.

Jurisdiction

6. Jurisdiction of this court arises as the acts happened in this county.

7. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here. Personal jurisdiction is apparent as the defendants are regularly making calls to residents in the state of Tennessee for the purpose of soliciting Tennessee residents to purchase extended car warranty policies from Palmer administrative.

**FACTUAL ALLEGATIONS**

8. In 2015, the Plaintiff received multiple automated phone calls to the Plaintiff's phone which were not related to any emergency purpose and without the Plaintiff's consent. The calls were from 732-807-5611 and were to 615-331-7262, which the Plaintiff used as both a residential phone number and cell phone number during the relevant timeframe. Even after the filing of this lawsuit and discussions with the Defendant's lawyer, calls continuted to come in by or on behalf of Defendant Palmer to the Plaintiff's cell phone 615-331-7262.

9. Defendant Palmer or agents acting on their behalf placed calls to the Plaintiff's cell phone and residential number using an "automated telephone dialing system" as defined by the TCPA 47 USC 227(a) for telemarketing puurposes, which is a system and equipment that has the capacity to store or produce telephone numbers

to be called using a random or sequential number generator and to dial these numbers. The Plaintiff ascertained that he was being called by an automated telephone dialing system by an agent of Palmer who stated that he would "take him off the list" after the Plaintiff threatened to sue them in April 2015 and acknowledged that Palmer was calling using an automated telephone dialing system to the Plaintiff's cell phone. Call lists are commonly used and uploaded into an automated telephone dialing system, thus the Defendant's reference to a "list" confirms that the Plaintiff was being called using an automated telephone dialing system. Additionally, the Defendants and their counsel have explicitly stated that they do use an automated telephone dialing system to call consumers, including the Plaintiff.

10. Each and every call to the Plaintiff was placed by equipment that has the capacity to store or produce telephone numbers to be called in a random or sequential manner and is otherwise defined as an automated telephone dialing system by the FCC and 47 USC 227. Each and every call to the Plaintiff was for telemarketing purposes. Each and every call was placed by Defendant Palmer or agents acting on their behalf without maintaining a do-not-call policy, without training the agents placing these calls on the use of a do-not-call list, and in violation of 46 USC 227(c)(5) via violations of 47 CFR 64.1200(d).

11. The Plaintiff requested a copy of Palmer's internal do-not-call policy on July 22nd, 2015 and to date, the Defendant's have failed to produce an internal do-not-call policy to the Plaintiff.[1] The law, 47 CFR 64.1200(d) states that the policy must be produced "on demand", which may be at best considered the same day. More than

---

[1] See Plaintiff's Exhibit A

24 days passed and the Defendants failed to do it. This is a violation of 47 CFR 64.1200(d).

12. In fact, the Defendant's counsel stated on 8/14/2015 that Defendant Palmer does not have an internal do-not-call policy to produce in response to the Plaintiff.[2] This is a violation of 47 CFR 64.1200(d) and each and every call placed was made without the Defendants properly having a do-not-call list.

13. Agents of Defendant Palmer are clearly not trained regarding the existance and use of an internal do-not-call list firstly, as there is no list maintained by Defendant Palmer to be trained on. The Defendants have admitted to not having an internal do-not-call list and therefore they violate that provision by default. This is a violation of 47 CFR 64.1200(d).

14. Even if there are third parties placing calls on behalf of Defendant Palmer as they seem to allege, these entities also failed to maintain a do-not-call list by continuing to place calls to the Plaintiff after the Plaintiff sued the Defendants. This is a violation of 47 CFR 64.1200(d)

15. Secondly, the actions of the Defendants show that they lack any sort of do-not-call training or prudent self-interest for that matter, as they continued to call the Plaintiff after the Plaintiff threatened to sue them and even after actually getting sued by the Plaintiff. Any reasonable person would immediately stop calling someone that sued them as a result of illegal telemarketing calls. This is a violation of 47 CFR 64.1200(d)

16. By having calls placed on their behalf, Defendant Palmer is deemed a "seller" per FCC definitions and is therefore just as liable as the entity that is actually placing

---

[2] See Plaintiff's Exhibit B

calls on their behalf.

17. The Plaintiff later discovered through conversations that the calls were coming from or on behalf of the Defendants, Palmer Administrative Services Inc., DBA Liberty Automotive protection and is part of an old scam of selling overpriced extended car warranties using automated telephone dialing systems as defined by the TCPA, 47 USC 227 et seq.

18. The agents durng these calls knew they were calling the wrong person and stated they were calling for Martha Lambert and the Plaintiff stated that he was not this person and didn't know who she was. For example in April 2015, the Plaintiff explicitly told the agent he spoke with that he was going to sue them and the only reason he was talking with them was to ascertain the identity of the calling party.

19. After the Plaintiff threatened to sue them, the agent stated that he would take the Plaintiff off the list and yet calls continued to the Plaintiff's cell phone. The agent acknowledged that they were placing automated calls and it is therefore reasonable for the Plaintiff to conclude that calls were made by an automated telephone dialing system to his cell phone. The Defendant's failure to honor the Plaintiff's request to be placed on the non-existant do-not-call list violates 47 CFR 64.1200(d) as they were undeterred by the Plaintiff's lawsuit threat and continued calling in the subsequent months.

20. The subsequent calls occured in April, June, and July 2015 after the Plaintiff threatened to sue the Defendants. Notably, the calls in June and July were after the Plaintiff had filed suit and served his complaint upon the defendants.

21. In this case, the defendants were seeking an upfront payment of over $2,000,

which could be financed at an additional cost to give a 3 year, 50,000 mile warranty on the Plaintiff's 2003 Ford Taraus, which is more than the replacement cost for an equivalent vehicle.

22. The Defendants have a regular practice of using automated calls with pre-recorded messages to call consumers, including the Plaintiff and they have called multiple times. The pre-recorded messages did not identify the company making the calls, in violation of 47 USC 227(c)(5) as codified by 47 CFR 64.1200(d)(4) which requires pre-recorded messages to state the identity of the calling party.

23. By placing automated telemarketing calls, the defendants violated 47 USC 227(b).

24. By placing calls with pre-recorded messages, the defendants violated 47 USC 227(b).

25. The Plaintiff alleges that all violations were willful violations of the TCPA. Additionally, the officers of the company are liable for these calls as they know they are violating the TCPA and have had numerous consumer complaints in the past, yet the continue to engage in these illegal practices. The company officers are the driving force for these TCPA violations by refusing to engage in reasonable practices designed to avoid TCPA violations and by encouraging their employees and 3rd party agents to place illegal telephone calls to consumers.

26. The Defendant officer of the company is well aware of multiple consumer complaints through the Better Business Bureau and directly to the company as they maintain a web page devoted to acknowledging the fact that they are getting a multitude of consumer complaints about robocalls from them.[3] Apparently, the defendants also have 3rd party marketing firms that are placing calls on their

---

[3]http://www.dealerservices.info/notice.php

behalf at the diection of Michael Shaftel, and these entities may also be liable for the calls in question. Even if a 3rd party marketing firm placed the calls, the defendant is still 100% liable for the calls and violations of the TCPA through vicarious liability and direct liability as being a "seller" as defined by 47 CFR 64.1200 and other FCC rulings.

27. The violations of 47 USC 227(b) entitles the Plaintiff to recover $1500 per call and the violations of 47 USC 227(c)(5) entitles the Plaintiff to recover an additional $1500 per call for a total of $3,000 per call. Charvatt v NMP LLC is a leading case on the issue of TCPA damages in the 6th Circuit and the court ruled that the maximum possible damages are $3,000 per phone call under circumstances similar to this.

28. In this case, there were at least 6 calls to the Plaintiff, although the Plaintiff is in the process of obtaining additional call records to ascertain the total number of calls.

29. Even after getting sued by the Plaintiff, Defendant Palmer still refused to alter their business practices and placed another call to the Plaintiff's cell phone in the summer of 2015.

30. Michael Shaftel in his role as an executive/officer of Defendant Palmer has personally authorized the use of an automated telephone dialing system as part of his business practices. Defendant Michael was personally involved in all decisions to use automated telephone dialing systems and he formulated the strategy whcih attempts to skirt the law by screening the phone numbers for only residential numbers, where he believed the automated calls would be legal.

Defendant Michael set up the business strategy to capitalize on the use of automated telephone dialing systems and is well aware of numerous consumer complaints regarding the use of automated telephone dialing systems by or on behalf of his company, but continues to place these illegal calls.

31. In this case, the Defendant guessed wrong and was actually calling the Plaintiff's cell phone and his screening of the phone numbers was poor at best and didn't even use free open source databases for this information.

32. These calls violated the Telephone Consumer protection act, 47 USC 227 (b) by their automated nature and entitle the Plaintiff to $1500 per call in damages.

33. The calls violated the TCPA due to the defendant's failure to maintain a Do not call list, failure to train the agents on the use of a do not call list, pursuant to 47 USC 227 (c)(5) as codified by the FCC's 47 CFR 64.1200(d)(4). These are a separate category of violations entitling the Plaintiff to an additional $1500 per call. In total, the Plaintiff is entitled to recover $3000 per call.

34. Punitive Damages should also be awarded although the TCPA doesn't expressly authorize it, neither does the FDCPA (15 USC 1692) or FCRA (15 USC 1681), but courts have used their inherent power to award punitive damages depending on the severity of the misconduct, regularly do so, and punitive awards have been upheld repeatedly on appeal.

35. For example, with a frequent TCPA litigant, Diana Mey, one of the largest awards of punitive damages in the history of the FDCPA was awarded when a court decided it was warranted when a scam artist debt collector threatened to sexually assault her.[4] Although circumstances that extreme are not present here, the

[4]See dianamey.com and Mey v Global AG LLC where 10 Million dollars were awarded

Plaintiff should still be afforded an opportunity to argue punitive damages under the court's inherent powers.

## CAUSES OF ACTION:

## COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

36. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

37. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing unsolicited automated calls to the Plaintiff's cell phone. These calls violated the TCPA, 47 USC 227(c)(5) as they failed to maintain a do not call list and train their agents on the use of it, refused to add the Plaintiff to their do not call list, and failed to identify themselves in automated messages.

## COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

38. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

39. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by placing automated calls without an emergency purpose to the Plaintiff's cell phone. These calls violated 47 USC 227(b)

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that

   judgment be entered against Defendants

B. Statutory damages of $3000 for each phone call

C. Pre-judgment interest from the date of the phone calls;

D. Punitive Damages in the amount of $15,000

E. Attorney's fees for bringing this action as incurred; and

F. Costs of bringing this action; and

G. For such other and further relief as the Court may deem just and proper

Respectfully submitted, August 14th, 2015

Craig Cunningham, Plaintiff, Pro-se

Mailing address:

5543 Edmondson Pike, ste 248

Nashville, tn 37211

615-348-1977

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE


CRAIG CUNNINGHAM, Pro-se )
)
     *Plaintiff* )
) CIVIL ACTION NO.: 3:2015-cv-00566
v. )                           )

Palmer Administrative Services, Inc. Dba Liberty Automotive Protection, Michael
Shaftel, John/Jane Does 1-5   )

    *Defendants.*


### Plaintiff's Notice regarding Second amended complaint


1. To be procedurally correct, the Plaintiff is submitting this signed second amended
complaint as the previously filed second amended complaint was mistakenly not signed.


Craig Cunningham
Plaintiff, Pro-se
5543 Edmondson Pike ste 248
Nashville, TN 37211

5543 Edmondson Pike
Ste 248
Nashville, TN 37211

U.S. POSTAGE
PAID
DALLAS, TX
AUG 31 15
AMOUNT
**$2.74**
R2305E124737-08

US Dist

801 Broad

Nashville, T

RECEIVED
IN CLERK'S OFFICE

SEP 04 2015

U. S. DISTRICT COURT
MID. DIST. TENN.